[Cite as *State v. Capone*, 2023-Ohio-3513.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 22CA0088-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LANCE P. CAPONE | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21CR0655 |

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

CARR, Judge.

{¶1} Appellant, Lance Capone, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} The criminal charges giving rise to the instant appeal stem from a controlled drug delivery executed by the Medina County Drug Task Force on January 29, 2021. In relation to the incident, the Medina County Grand Jury returned an indictment charging Capone with one count of possession of hashish, a second-degree felony. Thereafter, the grand jury returned a supplemental indictment charging Capone with one count of obstruction of justice, a fourth-degree felony. Capone pleaded not guilty to both charges at arraignment.

{¶3} Prior to trial, Capone entered a guilty plea to the obstruction of justice charge. The matter proceeded to a bench trial on the possession of hashish charge. After taking the matter under advisement, the trial court found Capone guilty. The trial court imposed an eight-year prison

sentence on the possession of hashish charge and a twelve-month prison term on the obstruction of justice charge. The trial court ordered that the sentences were to be served concurrently.

{¶4}  On appeal, Capone raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. CAPONE.

{¶5}  In his first assignment of error, Capone argues that the State failed to present evidence demonstrating that he possessed the hashish at issue in this case. Capone further contends that even if he did possess the drugs, the State failed to prove that he did so knowingly. This Court disagrees.

{¶6}  When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7}  Capone was convicted of one count of possession of hashish in violation of R.C. 2925.11(A)/(C)(7)(g). R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(C)(7) provides as follows:

If the drug involved in the violation is hashish or a compound, mixture, preparation, or substance containing hashish, whoever violates division (A) of this section is guilty of possession of hashish. The penalty for the offense shall be determined as follows:

\* \* \*

(g) If the amount of the drug involved equals or exceeds two thousand grams of hashish in a solid form or equals or exceeds four hundred grams of hashish in a liquid concentrate, liquid extract, or liquid distillate form, possession of hashish is a felony of the second degree, and the court shall impose as a mandatory prison term a maximum second degree felony mandatory prison term.

R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶8} At trial, the State presented evidence in support of the following narrative. On January 29, 2021, Agent Barnhardt of the Medina County Drug Task Force received a call from Agent Stayrook regarding a suspicious package that had been intercepted at a UPS store in Middleburg Heights.[1] Agent Stayrook explained that a K-9 deputy from the Cuyahoga County Sheriff's Office had alerted to the presence of drugs inside the package, which had allowed authorities to obtain a search warrant.

---

[1] Agent Stayrook passed away prior to trial.

{¶9}    Agent Stayrook asked Agent Barnhardt to assist him with a controlled delivery of the package. The package was addressed to a "Lance Perry" who resided at 1335 Ridge Road in Hinkley, Ohio. The agents were able to use a law enforcement database to determine that Capone's full name was Lance Perry Capone. Capone's last name was not listed on the package. After a short briefing, Agent Barnhardt, Agent Stayrook, and Detective Kinney, who worked for the Hinckley Police Department, traveled to the address listed on the package. An evidence tag was placed on the bottom of the package at that time. Testing conducted after the incident by the Ohio Bureau of Criminal Investigation revealed that the substance contained in the package was hashish solid. The net weight of the drugs tested was 3037.2 grams.

{¶10}    Upon arriving, Agent Barnhardt and Agent Stayrook approached the front door of the residence while Detective Kinney remained in his vehicle for officer safety reasons. Agent Barnhardt explained that the house had an enclosed front porch. Agent Barnhardt and Agent Stayrook knocked on the front door. When Capone answered the door, Agent Stayrook asked whether Lance Perry was home. Capone identified himself as Lance Perry. Agent Stayrook asked whether Capone was expecting a package, and Capone responded in the affirmative. Agent Stayrook signaled to the package that Officer Barnhardt was holding, and Capone confirmed that it was the package that he was expecting. Capone then accepted the package from the agents. At that point, Agent Stayrook identified himself, flipped over the package to reveal the evidence tag, and informed Capone that they needed to talk about the package. Capone grew apprehensive upon seeing the evidence tag.

{¶11}    The agents advised Capone of his *Miranda* rights and then discussed the situation with him. A recording of the conversation was played at trial. Although Capone initially attempted to convince the officers that it was not his package, he quickly acknowledged that his name was

on the package and that he had claimed it prior to knowing that he was speaking with law enforcement. Capone suggested that his cousin had paid him $200 to receive the package. Capone further stated that this incident was not the first time that he had received a package at the house. Capone offered to work with the drug task force in order to avoid serving prison time. During the course of the exchange, Capone admitted that he smoked marijuana and that there were drugs and drug paraphernalia in the house. While the agents inquired as to how Capone obtained the drugs in his house, Capone declined to answer that question.

{¶12} At trial, Capone testified that his cousin broached the subject of receiving packages after noticing that Capone was in possession of high-quality marijuana at his house. Capone told his cousin that he had the high-quality marijuana shipped from a dispensary in Colorado. Capone's cousin eventually asked whether he could also have packages sent to the house. Capone agreed and he described an occasion where he received a package and his cousin had paid him $200. While Capone was not aware of the contents of the first package, Capone testified that on a subsequent occasion his cousin had a package sent to the house that contained a large amount of hashish. According to Capone, he thought the packages merely contained marijuana and he was shocked to learn that hashish had been delivered to his house. Capone testified that he told his cousin to never send hashish to his house again. With respect to the incident in question, Capone received a text from his cousin that stated, "Yo I got a package arriving tomorrow. I got you on another $200 and we can smoke (smiling emoji)." Capone testified that he had a "weird gut feeling" about the situation because he had told his cousin not to send anymore packages. The following day, the drug task force came to his house and executed the controlled delivery.

{¶13} Capone's challenge to the sufficiency of the evidence on the basis that he did not knowingly take possession of the hashish is without merit. This Court remains mindful that we

must construe the evidence in the light most favorable to the State in resolving a sufficiency challenge. *Jenks*, 61 Ohio St.3d at 279. The State presented evidence that Capone was a drug user who himself had drugs delivered to his house on prior occasions. Capone also agreed to receive drug packages at his house on behalf of his cousin. Capone's cousin was willing to pay $200 in exchange for Capone's cooperation on each delivery. Capone had knowledge that his cousin had arranged to have a large amount of hashish delivered on a prior occasion. On the evening before the controlled delivery, Capone's cousin sent a text message indicating that another package was on the way. The State presented further evidence that Capone claimed the package when it was presented to him by the agents and, upon discovering that the package contained an evidence tag, quickly offered to work with the drug task force in order to avoid serving prison time. This evidence, when construed in the light most favorable to the State, was sufficient to sustain his conviction for possession of hashish.

{¶14} Capone's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

APPELLANT, LANCE CAPONE, WAS DENIED HIS RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

{¶15} In his second assignment of error, Capone contends that trial counsel rendered ineffective assistance by failing to file a motion to suppress. Capone further contends that initial defense counsel rendered ineffective assistance when he represented Capone during the early stages of the case despite having a conflict of interest.

{¶16} In order to prevail on a claim of ineffective assistance of counsel, Capone must show that "counsel's performance fell below an objective standard of reasonableness and that

prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Capone must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Capone must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534. "This Court need not address both prongs of the *Strickland* test if the appellant fails to satisfy either prong." *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 23, citing *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶17} Capone's first ineffective assistance claim is that trial counsel should have filed a motion to suppress on the basis that the agents conducted an unlawful warrantless entry into his enclosed front porch.

{¶18} Agent Barnhardt's trial testimony reveals that when the agents first approached Capone's residence, they noticed that the house had an enclosed front porch. Agent Barnhardt could not recall the exact structure of the porch. In the audio recording that was played at trial, Agent Stayrook can be heard remarking that there was nothing in the enclosed porch area, such as furniture. The agents first knocked on the porch door but they were not sure whether someone inside the house would be able to hear their knocking. The agents then opened the porch door, which was unlocked, and proceeded to knock on the front door. It was at that time that Capone answered the door and spoke to the agents.

{¶19} The decision not to file a motion to suppress falls within the purview of trial strategy and generally does not amount to ineffective assistance of counsel. *See State v. Fisk*, 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9. Capone's claim here rests on his blanket assertion that the agents' decision to enter the enclosed porch without a warrant was tantamount to a warrantless entry into his home. The viability of a motion to suppress would have turned on a fact-specific inquiry about the nature of the Capone's porch area. Here, the door to the enclosed porch was unlocked and the area did not contain any furniture. The agents knocked on the porch door but feared that the occupants of the house could not hear their knocking. The agents then opened the unlocked porch door in order to knock on the front door of the residence. Ohio courts have recognized that law enforcement may enter enclosed porches under certain circumstances in order to knock on the front door in hopes of speaking to the occupants of the home. *See State v. Green*, 7th Dist. Columbiana No. 16 CO 0023, 2017-Ohio-7757, ¶ 21-27 ("Based on this record, the facts and circumstances demonstrate that it was reasonable for the officers to believe that the interior door was the threshold door. * * * Although the officers did not knock on the porch door, they did knock on the interior door."). Under the circumstances of this case, we cannot say that Capone has demonstrated that he was prejudiced by trial counsel's decision not to file a motion to suppress.

{¶20} Capone's second ineffective assistance claim is that initial defense counsel breached his ethical duty to Capone when he undertook simultaneous representation of Capone's cousin. Initial defense counsel represented Capone for approximately one year after the grand jury handed down the original indictment. Capone's claim hinges on the notion that initial defense counsel also entered into an attorney-client relationship with Capone's cousin during that timeframe, which amounted to a breach of initial defense counsel's duty to Capone to provide conflict-free representation.

{¶21} In support of his position that Capone's cousin and initial defense counsel entered into an attorney-client relationship, Capone contends that his cousin and initial defense counsel had confidential communications and, further, that his cousin and initial defense counsel appeared together for a meeting with the Medina County Drug Task Force. A criminal defendant claiming that he was denied the right to conflict-free representation must show that an actual conflict of interest impacted his lawyer's performance. *Wood v. Georgia*, 450 U.S. 261, 273 (1981). "A possible conflict is insufficient." *State v. Getsy*, 84 Ohio St.3d 180, 187 (1998). Proving an actual conflict of interest requires a criminal defendant to show that defense counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980).

{¶22} At trial, Capone testified that initial defense counsel advised him not to cooperate with the drug task force and to avoid contact with his cousin. Capone ultimately grew weary of this plan and informed his cousin about the situation. Capone testified that his cousin wanted to help Capone with his case. Capone further testified that his cousin agreed to a meeting with the drug task force where Capone's cousin planned to implicate a third party. Similarly, Capone's cousin testified that he was put in contact with initial defense counsel by Capone with the aim of assisting in Capone's defense. While Capone's cousin testified that he sought assurances with initial defense counsel that their conversation would remain confidential, Capone's cousin specified that he "never hired [initial defense counsel]" to be his attorney. Capone's cousin testified that he met with the drug task force to "give someone else up" in hopes of helping Capone secure a more lenient sentence. Under the circumstances here, Capone cannot prevail on his ineffective assistance claim because he has failed to demonstrate initial defense counsel actively

represented competing interests or that he was otherwise prejudiced by initial defense counsel's performance.

**{¶23}** Capone's second assignment of error is overruled.

III.

**{¶24}** Capone's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
FLAGG LANZINGER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.